OUTTEN & GOLDEN LLP
Cara E. Greene
Luis C. Hansen
685 Third Avenue
25th Floor
New York, NY 10017

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMMA MCGOWAN,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE & CO.,<br><br>　　　　　　　　　Defendant. | **COMPLAINT**<br><br>**Demand for Trial by Jury** |

**NATURE OF THE ACTION**

　　　　1.　　Plaintiff Emma McGowan ("Ms. McGowan"), by and through her attorneys Outten & Golden LLP, brings this action against Defendant JPMorgan Chase & Co. ("JPMorgan" or "the Firm") for violating the New York State Labor Law, N.Y. Lab. L. Art. 6, § 194 ("NYLL") and the New York City Human Rights Laws, N.Y.C. Admin. Code §§ 8-101 *et seq*. ("NYCHRL").

　　　　2.　　JPMorgan, a global commercial and investment banking institution with its principal place of business in New York, New York, hired Ms. McGowan as an associate in its Alternative Investment Services in May 2007. Ms. McGowan was a dedicated employee with a strong performance record. Throughout her employment with JPMorgan, Ms. McGowan

established herself as an expert in the Firm's business products, systems, and technologies.

3. Nevertheless, the Firm paid her male counterparts significantly greater compensation than Ms. McGowan for performing substantially the same job. When Ms. McGowan inquired about the pay discrepancy, JPMorgan acknowledged that she was underpaid and made a commitment to bring her up to parity with her coworkers. JPMorgan, however, failed to follow through on that promise. Instead, JPMorgan discriminated against Ms. McGowan after she notified the Firm that she was pregnant and retaliated against her after she requested a reasonable accommodation for a pregnancy-related disability. After she took parental leave, JPMorgan reduced her bonus and denied her the salary increase it had previously promised her.

4. Ms. McGowan brings this action to remedy JPMorgan's blatant disregard of the law. As such, she seeks monetary, compensatory, liquidated, and punitive damages, injunctive and declaratory relief, and appropriate legal and equitable relief.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b)(1) because Defendant is considered to reside in New York, New York and this Court has personal jurisdiction over Defendant.

## PARTIES

Emma McGowan

7. Plaintiff, Emma McGowan, is a woman and an employee of JPMorgan within the meaning of all applicable statutes.

8. Ms. McGowan is currently a Vice President in JPMorgan's Alternative Investment Services ("AIS") department, based in New York, NY.

9. Ms. McGowan currently resides in Stamford, CT.

JPMorgan

10. Defendant JPMorgan Chase & Co. is a global commercial and investment banking institution.

11. Defendant is a Delaware corporation with its principal place of business in New York, New York.

12. During all relevant times, JPMorgan was Ms. McGowan's employer within the meaning of the NYLL and the NYCHRL.

13. Throughout the relevant period, Defendant had more than four (4) employees.

## FACTUAL ALLEGATIONS

### Background

14. Ms. McGowan has worked for JPMorgan's AIS department for over eleven years, starting in May 2007 as an associate in AIS's division in Ireland and moving to New York in 2014.

15. The AIS department is responsible for developing software for JPMorgan's clients to process trades. In her role, Ms. McGowan manages AIS's technology projects and supports clients (JPMorgan business units) with their technology needs.

16. To perform these duties, Ms. McGowan and her peers rely on their knowledge of AIS's products and systems. No specialized or advanced degree is necessary or relevant for performing these duties.

17. Throughout her employment, Ms. McGowan has performed her duties in an

exemplary manner and she has received several promotions over her time with the Firm.

**JPMorgan Pays Ms. McGowan Less than Her Male Peers for Performing Equal Work**

18.     Though JPMorgan considers Ms. McGowan a key employee with subject matter expertise in several of its technologies and applications, the Firm pays her significantly less compensation than her male peers for performing the same job duties.

19.     In 2014, after JPMorgan transferred Ms. McGowan from Ireland to their office in Brooklyn, New York, Ms. McGowan learned that JPMorgan was paying her male replacement twice as much as it had paid her, even though she and the man had the same qualifications and experience and performed the same job duties.

20.     At the same time, Ms. McGowan's management team informed her that she would be earning $77,000 per year while working in Brooklyn. Not only was this amount well below the market rate in New York City, but it was also less than half of what her male peers earned in AIS's New York office.

21.     Ms. McGowan complained about the low salary to JPMorgan's Human Resources department, which acknowledged that the proffered base salary was significantly less than the market rate and increased it to $100,000.00.

22.     Ms. McGowan's base salary continued at $100,000.00 for the next three years and she received a bonus of $12,000 each year.

23.     In February 2017, Ms. McGowan was promoted to Vice-President and her salary was increased to $112,000.

24.     At the time, the then Head of Global AIS Technology informed her that the February 2017 salary increase was part of a multi-year plan to bring her salary up to par with the market and her colleagues. Her bonus for 2017, however, remained at $12,000.

4

25. Though her manager promised Ms. McGowan that JPMorgan had a multi-year plan to close the gap between her compensation and the compensation of her male peers, JPMorgan did not give her a raise in 2018 and it decreased her bonus from $12,000 to $1,000.

26. In contrast, JPMorgan paid a male AIS employee who works in the same office and under similar working conditions as Ms. McGowan, and whose job requires the same skill, effort, and responsibility, approximately $150,000 in base salary and $50,000 in bonus.

27. Although Ms. McGowan and the male employee performed equal work – their daily responsibilities and tasks were virtually identical and the only difference between the two was the internal clients to whom they were assigned – the male employee earned a significantly higher annual salary and bonus than Ms. McGowan in every year between 2014 and 2018.

28. That man is not the only man JPMorgan has paid more than Ms. McGowan for equal work. On information and belief, JPMorgan has paid all the men in her group more than her, even though they perform substantially equivalent work. Indeed, Ms. McGowan and the men in her group often cover for each other when one is absent or unavailable.

29. The pay disparity between Ms. McGowan and her male comparators is not based on a seniority system, a merit system, or a system which measures earnings by quantity or quality of production.

30. The pay disparity between Ms. McGowan and her male comparators is not based on any factors that are job-related and consistent with a business necessity.

**Defendant Discriminated Against Ms. McGowan Because of her Pregnancy and Disability**

31. Not only did JPMorgan discriminate against Ms. McGowan by paying her less than her male peers, JPMorgan discriminated against Ms. McGowan because of her pregnancy.

32. In December 2016, a senior Vice President in Defendant's AIS department

5

informed Ms. McGowan that she was moving to another position and that Ms. McGowan would be a great replacement for the senior Vice President position.

33. The senior Vice President told Ms. McGowan that Ms. McGowan, "stood out to [the senior Vice President] when [they] worked together," and that Ms. McGowan had "excellent communication skills and work ethic."

34. A few days after this conversation, Ms. McGowan informed her management team that she was pregnant.

35. Soon after, Ms. McGowan met with the senior Vice President and the Head of Global Technology for Fund Services and Global Custody (the "Global Head") to discuss the position.

36. The senior Vice President told Ms. McGowan that Ms. McGowan was no longer a "good fit" for the position, because it would be "career suicide" for Ms. McGowan to take the position and then take maternity leave. The Global Head agreed, stating that it would not "go down well with senior management." He also added that the new role would "likely be too stressful" for Ms. McGowan because of her pregnancy. Thereafter, JPMorgan did not consider Ms. McGowan for the senior Vice President position.

37. These types of negative comments about Ms. McGowan's pregnancy were common throughout her pregnancy.

38. In January 2017, the Global Head informed Ms. McGowan that the Firm was promoting her to Vice President. A few weeks after this conversation, Ms. McGowan followed up with the Global Head about the status of her promotion. In response, the Global Head stated words to the effect, "Why do you care? You are going to be a mom now anyway." He added that Ms. McGowan was lucky to get the promotion, since she would have had "no chance" of being

promoted after giving birth. He stated that it was "good timing" that she was recommended for the promotion before she disclosed her pregnancy.

39. Moreover, on several occasions, the Global Head and two male Executive Directors asked Ms. McGowan whether she planned on returning to work after her maternity leave. They joked that she would soon be "barefoot in the kitchen," and that they should give her the "easy projects" because she would lack ambition now that she was pregnant.

40. On May 22, 2017, Ms. McGowan was temporarily hospitalized with high blood pressure. After the hospitalization, her OB/GYN concluded that her two-hour commute was contributing to the high blood pressure. Because she was thirty-six (36) weeks pregnant, her OB/GYN instructed her to work remotely four (4) days per week.

41. Ms. McGowan asked the Global Head for this accommodation and gave him a doctor's note explaining her condition. Though she could perform the essential functions of her job from home, the Global Head told her that the request would be denied because she would be "slacking" if she worked remotely.

42. Because Ms. McGowan insisted that the accommodation was necessary and reasonable, the Firm eventually allowed her to work remotely four (4) days per week for the remainder of her pregnancy, but only after subjecting her to an independent medical examination by JPMorgan's physician.

43. Soon after the accommodation was granted, however, a male manager joked that Ms. McGowan would be "at home in [her] pajamas watching Oprah all day" and that he would like to be able to get pregnant "so [he] could have a paid holiday."

44. Ms. McGowan's maternity leave began on June 12, 2017.

**Defendants Retaliated Against Ms. McGowan Based on Her Protected Conduct**

45. Despite Ms. McGowan's strong performance record, Defendant retaliated against her for requesting an accommodation and opposing discrimination, and continued to discriminate against her.

46. On January 16, 2018, the Global Head informed her that – despite the promises made to her in the prior year regarding salary increases – she would not be receiving a raise.

47. Ms. McGowan objected to this and complained that it was pregnancy discrimination. In response, he told her that the decision was final.

48. Ms. McGowan then learned that JPMorgan had decreased her bonus from $12,000 the prior year to only $1,000.

49. Ms. McGowan filed a complaint of discrimination with the Firm's HR department.

50. JPMorgan did not respond to Ms. McGowan's complaint or conduct a reasonable investigation into her claims.

**CONDITIONS PRECEDENT**

51. Contemporaneously with the filing of this Complaint, Ms. McGowan has mailed a copy to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**Pay Discrimination in Violation of**
**New York State Labor Law (N.Y. Lab. L. Art. 6, § 194)**

52. Plaintiff realleges and incorporates by reference all allegations in preceding paragraphs.

53. Defendant paid Plaintiff significantly less than her male counterparts for substantially equivalent work that required substantially equal skill, effort, and responsibility, and was performed under similar working conditions.

54. Defendant's violation of the NYLL, as described in this Complaint, was willful and intentional. Defendant did not make a good faith effort to comply with the NYLL with respect to its compensation of Plaintiff.

55. As a consequence of Defendant's unlawful acts, Plaintiff has been deprived of compensation and is entitled to recovery of such amounts plus liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and other compensation pursuant to N.Y. Lab. L. § 194.

## SECOND CAUSE OF ACTION
### Discrimination Because of Gender and Pregnancy in Violation of New York City Human Rights Law (N.Y.C. Admin. Code § 8-101 *et seq.*)

56. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

57. The NYCHRL prohibits any "employer or an employee or an agent thereof" from discriminating against an employee in the terms and conditions of her employment based upon the employee's gender or pregnancy.

58. Defendant violated the NYCHRL by discriminating against Plaintiff in the terms and conditions of her employment because of her gender and pregnancy.

59. Defendant's actions amount to willful or wanton negligence or recklessness and/or evidence a conscious disregard for Plaintiff's statutorily protected rights.

60. Plaintiff is entitled to damages as a result of Defendant's unlawful acts, including past and future lost wages and benefits, damages to compensate her for past and future physical

and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

## THIRD CAUSE OF ACTION
**Discrimination Because of Disability in Violation of
New York City Human Rights Law (N.Y.C. Admin. Code § 8-101 *et seq.*)**

61. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

62. The NYCHRL prohibits any employer from discriminating against any employee based on their disability.

63. Defendant violated the NYCHRL when it discriminated against Plaintiff in the terms and conditions of her employment because of her disability.

64. Defendant's actions amount to willful or wanton negligence or recklessness and/or evidence a conscious disregard for Plaintiff's statutorily protected rights.

65. Plaintiff is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

## FOURTH CAUSE OF ACTION
**Retaliation in Violation of
New York City Human Rights Law (N.Y.C. Admin. Code § 8-101 *et seq.*)**

66. Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

67. Plaintiff engaged in protected activities under the NYCHRL, including requesting a reasonable accommodation and opposing discrimination.

68. Defendant violated the NYCHRL when it treated Plaintiff less well because of her protected request for a reasonable accommodation and for opposing discrimination.

69. Defendant's actions amount to willful or wanton negligence or recklessness and/or evidence a conscious disregard for Plaintiff's statutorily protected rights.

70. Plaintiff is entitled to damages including, but not limited to past and future lost wages and benefits, damages to compensate her for past and future physical and emotional distress, punitive damages, reasonable attorneys' fees and costs of this action, and pre-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. Declare the acts and practices complained of herein to be violations of the NYLL and the NYCHRL;

B. Enjoin and permanently restrain these violations of the NYLL and the NYCHRL;

C. Direct Defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

D. Award Plaintiff damages to make her whole for all earnings she would have received but for Defendant's unlawful treatment, including, but not limited to, wages, bonuses, pension and retirements, health care coverage, and other lost benefits, including future lost wages and benefits;

E. Direct Defendants to pay liquated damages of three hundred percent under the NYLL;

F. Direct Defendants to pay punitive damages under the NYCHRL in an amount to be determined by the jury;

G. Award Plaintiff damages to compensate for any adverse tax consequences;

H.      Award pre-judgment interest at the statutory rate of 9%;

I.      Award Plaintiff attorneys' fees, costs, and disbursements pursuant to N.Y. Lab. L. § 194 and N.Y.C. Admin. Code § 8-101 et seq; and

J.      Award such other legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated: New York, New York
       September 21, 2018

Respectfully submitted,

/s/ Cara E. Greene
Cara E. Greene
Luis C. Hansen
**OUTTEN & GOLDEN LLP**
685 Third Avenue
25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
*Attorneys for Plaintiff*