UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
EMMA MCGOWAN,                                     :
                                                  :
           Plaintiff,                   :  OPINION & ORDER
                                                  :
  -v.-                                           :  18 Civ. 8680 (PAC) (GWG)
                                                  :
JPMORGAN CHASE BANK, N.A.,                        :
                                                  :
           Defendant.                   :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Emma McGowan brought this case against JPMorgan Chase Bank, N.A. ("JPMC") asserting claims of pay, pregnancy, sex, and disability discrimination as well as a retaliation claim. All of McGowan's claims arise under New York State and New York City laws. McGowan has now filed a motion seeking to compel JPMC to produce certain documents and deposition testimony that were withheld on the basis of the attorney-client and work-product privileges.[1] JPMC opposes this motion. For the following reasons, McGowan's motion to compel is granted in part and denied in part.

I. BACKGROUND

    A. Facts

---

[1] See Letter from Cara E. Greene, dated Jan. 9, 2020 (Docket # 81) ("Mtn. Ltr."); Letter from Cara E. Greene, dated Jan. 10, 2020 (Docket # 83); Opposition Brief, filed Jan. 28, 2020 (Docket # 84) ("Opp. Br."); Declaration of Gershom R. Smith in Support of Opp. Brief, filed Jan. 28, 2020 (Docket # 85) ("Smith Decl."); Reply Memorandum of Law in Further Support of Plaintiff's Motion to Compel, filed Feb. 4, 2020 (Docket # 86) ("Reply"); Letter from Cara E. Greene, dated Feb. 5, 2020 (Docket # 87); Defendant's Sur-Reply in Further Opposition to Plaintiff's Motion to Compel, filed Feb. 11, 2020 (Docket # 88) ("Sur-Reply").

McGowan works for JPMC, a commercial and investment bank, in its Alternative Investment Services Department ("AIS").  Complaint, filed Sept. 21, 2018 (Docket # 1) ("Compl.") ¶¶ 8, 10, 14.  AIS develops software that JPMC's clients use to process trades.  Id. ¶ 15.  McGowan started at JPMC in Ireland in 2007 and was transferred to New York in 2014.  Id. ¶¶ 14, 19.  On January 16, 2018, McGowan was informed that she would not receive a salary increase, despite previous conversations suggesting she would receive one.  Id. ¶ 46.  The following day, McGowan contacted JPMC's human resources department complaining of discrimination.  Mtn. Ltr. at 1.  On some unspecified date between January 17, 2018 and February 13, 2018, an individual named Sharita Dove, who was a Vice President in Employee Relations began investigating McGowan's claim.  Smith Decl. ¶ 7.

On February 13, 2018, Cara E. Greene, McGowan's lawyer, emailed JPMC's in-house counsel, Jamie Kohen, and informed Kohen that she represented McGowan.  Id. ¶ 5.  Kohen then requested that Smith, another in-house legal counsel, contact Greene.  Id. ¶¶ 2, 6.  Smith declines to state whether he in fact contacted Greene.  Smith does say, however, that on February 13, 2018, he began a "privileged investigation into the allegations of discrimination and unequal treatment raised by Plaintiff for the purpose of rendering legal advice and responding to Plaintiff's counsel's email."  Id. ¶ 8.  He "decided the investigation would be privileged and conducted in a manner consistent with in-house counsel's provision of legal advice to JPMC in anticipation of litigation."  Id. ¶ 9.  Ann Cabrera-Vargas was assigned to help conduct the investigation.  Id. ¶ 10.  Smith states that "Ana J. Cabrera-Vargas spoke to JPMC managers to collect facts and information needed for me to render legal advice."  Id. ¶ 11.  Cabrera-Vargas, along with an individual who is not otherwise identified named Gianna DiMaulo, gathered

2

documents and other information at Smith's direction. Id. ¶ 12. JPMC's privilege log indicates that Dove, Cabrera-Vargas, and DiMaulo all work for the same unit of JPMC, which is identified only as "HRBP." See Defendant's Privilege Log, filed Jan. 28, 2020 (Docket # 85-1) at 2.

According to Smith, "[a]ll of the documents and communications withheld by Defendant are communications that occurred at [Smith's] direction for the purpose of evaluating Plaintiff's claims and rendering legal advice." Id. ¶ 14. Some of the documents also include his "mental impressions and conclusions as to the ongoing privileged investigation, or the outcome thereof." Id. ¶ 15.

### B. McGowan's Motion to Compel

McGowan seeks to have JPMC produce the documents withheld as privileged. Reply at 11. In the alternative, she asked that the Court conduct an in camera review of the documents to determine if attorney-client and work-product privileges were properly asserted. Id. She also seeks an order that JPMC produce Sharita Dove for a deposition and that the depositions of Anthony Masi and DiMaulo be reopened for testimony with respect to the investigation prior to February 13, 2020, on the ground that she was prevented from asking questions during their depositions due to an erroneous assertion of privilege over what Smith now admits was a "non-privileged investigation." Id.[2]

## II. GOVERNING LAW

### A. Law Governing Attorney-Client Privilege

Because this Court's subject matter jurisdiction is based upon diversity, Compl. ¶ 5, state

---

[2] On March 5, 2020, this Court directed JPMC to provide copies of the disputed documents for the Court to conduct an in camera review. See Order, filed Mar. 5, 2020 (Docket # 91).

law provides the rule of decision concerning the claim of attorney-client privilege, see Fed. R. Evid. 501; Dixon v. 80 Pine St. Corp., 516 F.2d 1278, 1280 (2d Cir. 1975). In New York, the statutory codification of the privilege is as follows:

> [A]n attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication . . . .

N.Y. C.P.L.R. § 4503(a)(1). For the privilege to apply, the communication from the attorney to client must be made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." Rossi v. Blue Cross & Blue Shield of Greater N.Y., 73 N.Y.2d 588, 593 (1989); see also United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). The communication itself must be "primarily or predominantly of a legal character." Rossi, 73 N.Y.2d at 594. "The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 379 (1991). "[L]egal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." In re Cty. of Erie ("Erie I"), 473 F.3d 413, 419 (2d Cir. 2007).[3] The attorney-client

---

[3] While In re Cty. of Erie was decided under federal privilege law, New York law on attorney-client privilege is "generally similar to accepted federal doctrine." Bank of Am., N.A. v. Terra Nova Ins. Co. Ltd., 211 F. Supp. 2d 493, 495 (S.D.N.Y. 2002); accord Argos Holdings Inc. v. Wilmington Tr. Natl. Ass'n., 2019 WL 1397150, at *2 (S.D.N.Y. Mar. 28, 2019) ("New York law of attorney-client privilege is, with certain exceptions, substantially similar to the federal doctrine." (internal quotation marks and citation omitted)); Edebali v. Bankers Stand. Ins. Co., 2017 WL 3037408, at *4 n.2 (E.D.N.Y. July 17, 2017) ("[T]he distinction between New York and federal law on attorney-client privilege is quite indistinguishable, as the law intersects in all of its facets, and are viewed interchangeably." (internal quotation marks and citation omitted)). Because the law of the two jurisdictions is similar in all respects discussed in this opinion, we sometimes cite to cases applying federal law.

privilege "protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client." United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999); see also Upjohn Co. v. United States, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney . . . ." (citations omitted)); In re Six Grand Jury Witnesses, 979 F.2d 939, 944 (2d Cir. 1992) ("[T]he cloak of the privilege simply protects the communication from discovery, the underlying information contained in the communication is not shielded from discovery.").

"A corporation's communications with counsel, no less than the communications of other clients with counsel, are encompassed within the legislative purposes of CPLR 4503, which include fostering uninhibited dialogue between lawyers and clients in their professional engagements, thereby ultimately promoting the administration of justice." Rossi, 73 N.Y.2d at 592 (citations omitted). A communication between an attorney and the agent or employee of a corporation may be privileged where the agent "possessed the information needed by the corporation's attorneys in order to render informed legal advice." In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 218 (S.D.N.Y. 2001) (citing Upjohn, 449 U.S. at 391). "The privilege applies to communications with attorneys, whether corporate staff counsel or outside counsel." Rossi, 73 N.Y.2d at 592 (citation omitted); accord Stock v. Schnader Harrison Segal & Lewis LLP, 142 A.D.3d 210, 216 (1st Dep't 2016). Nonetheless, because in-house counsel may have "mixed business-legal responsibility . . . their day-to-day involvements in their employers' affairs may blur the line between legal and nonlegal communications." Rossi, 73 N.Y.2d at 592. Accordingly, given that "privilege obstructs the truth-finding process and its scope is limited to

5

that which is necessary to achieve its purpose the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure." Id. at 593 (citations omitted).

Under New York law, "the burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity." Spectrum Sys., 78 N.Y.2d at 377 (citing cases). "The proponent of the privilege has the burden of establishing that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and [that] it was made in order to assist in obtaining or providing legal advice or services to the client." Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C., 191 Misc. 2d 154, 166 (Sup. Ct. 2002) (citation omitted); accord People v. Mitchell, 58 N.Y.2d 368, 373 (1983) (citing cases). Such showings must be made through "competent evidence" such as "affidavits, deposition testimony or other admissible evidence." Parneros v. Barnes & Noble, Inc., 332 F.R.D. 482, 491 (S.D.N.Y. 2019); accord Bowne of N.Y. City, Inc. v. AmBase Corp., 150 F.R.D. 465, 472 (S.D.N.Y. 1993). The burden cannot be met by "'mere conclusory or ipse dixit assertions'" in unsworn motion papers authored by attorneys. See von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 146 (2d Cir. 1987) (quoting In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965)). It is also the burden of the party asserting a privilege to establish that it has not been waived. See John Blair Commc'ns, Inc. v. Reliance Capital Grp., 182 A.D.2d 578, 579 (1st Dep't 1992).

    B.  Law Governing the Work-Product Doctrine

"Federal law governs the applicability of the work product doctrine in all actions in federal court." Wultz v. Bank of China Ltd., 304 F.R.D. 384, 393 (S.D.N.Y. 2015) (citing Allied

Irish Banks, P.L.C. v. Bank of Am., N.A., 252 F.R.D. 163, 173 (S.D.N.Y. 2008)). Federal Rule of Civil Procedure 26(b)(3) codifies the doctrine in part, providing that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," unless "the party shows that it has substantial need for the materials . . . and cannot, without undue hardship, obtain their substantial equivalent by other means." The work-product rule is designed "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)); accord United States. v. Nobles, 422 U.S. 225, 238-39 (1975). The party asserting work-product protection must demonstrate that the material at issue "(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." Allied Irish Banks., 252 F.R.D. at 173 (internal quotation marks and citation omitted).

"Documents prepared in the ordinary course of business, or that would have been created whether or not litigation was anticipated, are not protected by work-product immunity. . . . It is firmly established, however, that a document that assists in a business decision is protected by work-product immunity if the document was created because of the prospect of litigation." In re Copper Mkt. Antitrust Litig., 200 F.R.D. at 221 (citing Adlman, 134 F.3d at 1202). Ultimately, "'in anticipation of litigation'" means that "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained

7

because of the prospect of litigation.'" Costabile v. Cty. of Westchester, 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (quoting Adlman, 134 F.3d at 1202).

Notwithstanding the common description of the doctrine as the "attorney" work-product doctrine, it is not in fact necessary that the material be prepared by or at the direction of an attorney. Parneros, 332 F.R.D. at 492. The text of Fed. R. Civ. P. 26(b)(3)(A) accords the protection to material prepared "by or for [a] party or its representative" — not merely material prepared by or for an attorney. The Advisory Committee Notes (1970) to Rule 26(b)(3) confirm that the intention of the Rule was to protect material also prepared by non-attorneys. Fed. R. Civ. P. 26(b)(3) advisory committee's note to 1970 amendment; see Wultz, 304 F.R.D. at 394; accord Goff v. Harrah's Operating Co., 240 F.R.D. 659, 660 (D. Nev. 2007) ("It may be surprising to long-time practitioners that a lawyer need not be involved at all for the work product protection to take effect." (internal quotation marks and citation omitted)). Thus, the rule "afford[s] protection to materials gathered by non-attorneys even where there was no involvement by an attorney." Wultz, 304 F.R.D. at 394 (citing cases).

III. DISCUSSION

During the course of briefing on this motion, JPMC conceded that its investigation into McGowan's complaint prior to February 13, 2018, was not privileged. We first discuss the effect of that concession and then turn to JPMC's contention regarding the investigation that began on February 13, 2018, following Greene's email to JPMC's in-house counsel. See Smith Decl. ¶¶ 7-8.[4]

---

[4] JPMC argues that McGowan's motion to compel fails because it was untimely. Opp. Br. at 1 n.1. We do not consider this argument inasmuch as it was made in a footnote and without citation to authority, and thus violates Local Civil Rule 7.1(a)(2) (a party's memorandum

A. The Investigation Prior To February 13, 2018

JPMC concedes that the investigation conducted by Dove is not subject to attorney-client or work-product privileges. See Opp. Br. at 2, 3 (referring to the initial investigation as "non-privileged" and noting that it produced all documents related to this phase of the investigation); Smith Decl. ¶ 7. JPMC has voluntarily turned over a document that postdated February 13, 2018, previously withheld on the basis of privilege because it determined that the communication was not conducted at the direction of JPMC's counsel. See Opp. Br. at 3 n.3. JPMC admits that "throughout discovery Defendant asserted a blanket claim of attorney-client privilege over its investigation into Plaintiff's allegations of discrimination." Sur Reply at *2.[5] And while JPMC has explained its prior withholding of the document, see id. at *2-3; Opp. Br. at 3 n.3, it has not explained why Dove was not identified in either of its interrogatory responses as an individual likely to have discoverable information regarding McGowan's claims or JPMC's defenses.

Given that McGowan first learned of the "non-privileged" investigation and Dove's role through JPMC's opposition to her motion to compel, see Reply at 1, McGowan is certainly entitled to an opportunity to question Dove about this initial investigation. Additionally, she is entitled to re-depose Anthony Masi and Gianna DiMaulo regarding this initial investigation.[6]

---

of law must "set[]forth the cases and other authorities relied upon in support of the motion" and be "divided, under appropriate headings, into as many parts as there are issues to be determined").

[5] "*__" indicates a page number assigned by the Court's ECF system.

[6] McGowan also asserts that JPMC's counsel "blocked deponents Mr. Masi and Gianna DiMaulo from testifying regarding the underlying information upon which the investigation was based." Reply at 4. Certainly, information and documents that existed independently of the investigation are not privileged and must be disclosed if relevant. It is unclear from the cited portions of the deposition transcripts, however, that the witnesses were improperly instructed in this regard.

B. <u>The Post-February 13 Investigation</u>

McGowan questions whether the investigation prior to February 13 can be separated from the investigation after February 13. Mtn. Ltr. at 2-3; Reply at 5-7. But case law recognizes that "an employer's investigation may shift from an internal investigation in response to plaintiff's claims to an investigation for the purposes of mounting a legal defense against any such claims." <u>Babbitt v. Koeppel Nissan, Inc.</u>, 2019 WL 3296984, at *3 (E.D.N.Y. July 23, 2019) (internal quotation marks, alterations, and citation omitted). Indeed, McGowan concedes this point. <u>See</u> Mtn. Ltr. at 2 ("an employer's investigation may shift from an internal investigation in response to a plaintiff's claims to an investigation for the purpose of mounting a legal defense against any such claims" (internal quotation marks, alterations, and citations omitted)). McGowan's main argument is that Smith's declaration is too conclusory to allow a finding that the investigation was being conducted at the direction of counsel for the purpose of providing legal advice.[7] <u>See</u> Mtn. Ltr. at 2; Reply at 5-7. The Court disagrees. While Smith certainly could have been more forthcoming, the circumstances here — in particular, the telephone call from plaintiff's attorney, Smith Decl. ¶ 6, the fact that Dove was no longer in charge of the investigation after Smith became involved, and the fact that new individuals became involved in the investigation — coupled with Smith's uncontradicted statement that his purpose in directing the investigation was to provide legal advice, <u>id.</u> ¶ 9, are sufficient to allow us to conclude that the character of the investigation changed after February 13 and that it in

---

[7] In her reply, McGowan also spends a significant amount of time encouraging the Court to closely scrutinize JPMC's assertions because it originally failed to turn over a non-privileged document. <u>See</u> Reply at 5-6. This concern should be alleviated by the Court's <u>in camera</u> review of the documents.

fact was being conducted for the purpose of allowing Smith to provide legal advice to the corporation. See Chen-Oster v. Goldman, Sachs & Co., 293 F.R.D. 547, 555 (S.D.N.Y. 2013) ("'sworn testimony of a witness with personal knowledge' asserting that the information was given to counsel 'to provide legal advice' was sufficient to find that the communication occurred 'for the purpose of providing legal advice' and thus privileged).

In order for Smith to provide this legal advice to JPMC, he directed Cabrera-Vargas and DiMaulo to gather documents. Smith Decl. ¶¶ 11-12. This required them to communicate with others — who in turn communicated with more employees — via JPMC's internal Answer Key system or email, with the goal of gathering information so that Smith could render legal advice. See Upjohn, 449 U.S. at 390-91 (the "first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." (citations omitted)); see also Chen-Oster, 293 F.R.D. at 554-55 (information compiled for database during an investigation being conducted for attorney held privileged as an attorney-client communication). The documents JPMC withheld reflect such communications, and thus are privileged. See Parneros, 332 F.R.D. at 494 ("'Factual investigations conducted by an agent of the attorney, . . . clearly fall within the attorney-client rubric.'" (quoting Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 71 (S.D.N.Y. 2010))); see also Chen-Oster, 293 F.R.D. at 554-55.

In light of the conclusion that the investigation was indeed privileged and the documents withheld are subject to attorney-client privilege, it is not necessary to reach the issue of whether the materials are protected by the work product doctrine.

C. "At Issue" Waiver

McGowan argues that JPMC has waived any privilege by placing the advice of counsel "at issue" in the litigation. She points to two paragraphs in JPMC's answer to support this argument. See Ltr. Mtn. at 3-4; Reply at 8-9. One paragraph consists of a simple denial of McGowan's allegation that JPMC "did not respond to Ms. McGowan's complaint or conduct a reasonable investigation into her claims." See Answer, filed Nov. 19, 2018 (Docket # 11) ("Answer") ¶ 50 (referring to Compl. ¶ 50). The other paragraph is a list of defenses in which JPMC asserts that it "acted at all times in good faith." Id. at 12 (Defense ¶ 15). The full paragraph states:

> Defendant acted at all times in good faith and consistently maintained, implemented, and enforced a policy in the workplace against harassment, discrimination, and retaliation and otherwise exercised reasonable care to prevent and correct promptly any alleged harassment, discrimination, and/or retaliation to which Plaintiff claims she was allegedly subjected. Plaintiff unreasonably failed to take advantage of preventative and corrective opportunities provided by Defendant or to avoid harm otherwise.

Id.

1. The Doctrine of "At Issue" Waiver

Courts have found waiver of the attorney-client privilege "'when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense.'" In re Cty. of Erie ("Erie II"), 546 F.3d 222, 228 (2d Cir. 2008) (quoting Sedco Int'l S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)).[8] However, "that a privileged communication contains information relevant to issues the

---

[8] Waiver of attorney-client and work-product privilege are governed by the same

parties are litigating does not, without more, place the contents of the privileged communication itself 'at issue' in the lawsuit; if that were the case, a privilege would have little effect." Deutsche Bank Tr. Co. of Ams. v. Tri-Links Inv. Tr., 43 A.D.3d 56, 64 (1st Dep't 2007).

"The waiver doctrine, however, does not apply exclusively to situations where a party explicitly relies — or states that it intends to rely — on attorney-client communications." Parneros, 332 F.R.D. at 501. The "at issue" waiver doctrine has also found waiver even where there is no intention to rely on attorney-client communications. In United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991), the Second Circuit upheld a trial court's ruling that if a defendant testified about his own good faith regarding the legality of certain actions, it would open the door to cross-examination into communications with his attorney on that subject. Id. at 1291-93. In affirming the district court with respect to the privilege issue, the Second Circuit explained that "the attorney-client privilege cannot at once be used as a shield and a sword." Id. at 1292 (citing Clark v. United States, 289 U.S. 1, 15 (1933); von Bulow, 828 F.2d at 103). "Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." Id. (citations omitted). Bilzerian reasoned that a finding of wavier was appropriate because any testimony that the defendant "thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue." Id. Thus, "[h]is conversations with counsel regarding the

---

doctrine. See Leviton Mfg. Co. v. Greenberg Traurig LLP, 2010 WL 4983183, at *8 (S.D.N.Y. Dec. 6, 2010) (noting that, for at-issue waiver, "[t]he same analysis applies to documents withheld on the basis of the work-product doctrine" as to those withheld as privileged), objections overruled by 2011 WL 2946380 (S.D.N.Y. July 14, 2011); Resolution Tr. Corp. v. Mass. Mut. Life Ins. Co., 200 F.R.D. 183, 192 (W.D.N.Y. 2001) ("The 'at-issue' waiver applies both to the attorney-client and work-product privileges." (citation omitted)).

legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." Id. Bilzerian thus found waiver even though there was no effort by the defendant to actually rely on his attorney's advice in order to prove his good faith. Id.

In keeping with this principle, other cases have recognized that an implied waiver "may be found even if the privilege holder does not attempt to make use of a privileged communication." In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 470 (S.D.N.Y. 1996). For example, in Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc., 331 F.R.D. 218 (E.D.N.Y. 2019), the court held that waiver can "occur even if the asserting party does not make direct use of the privileged communication itself when that party avers material facts at issue related to the privileged communication, and where the validity of those facts can only be accurately determined through an examination of the undisclosed communication." Id. at 228 (emphasis added) (citation omitted); accord Favors v. Cuomo, 285 F.R.D. 187, 199 (E.D.N.Y. 2012) ("[C]ourts within this Circuit, relying on Bilzerian, have reaffirmed the broader principle that forfeiture of the privilege may result where the proponent asserts a good faith belief in the lawfulness of its actions, even without expressly invoking counsel's advice." (citations omitted)); Leviton, 2010 WL 4983183, at *3 ("advice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim of defense"). While the instant case arises under New York law, New York courts have explicitly articulated the same rule. See, e.g., Vill. Bd. of the Vill. of Pleasantville v. Rattner, 130 A.D. 2d 654, 655 (2d Dep't 1987) (privilege is waived where defendant raises a defense of "good faith, the validity of which can only be tested

14

by invasion of the attorney-client privilege" (citation omitted)).

Importantly, the question in at-issue waiver cases is not simply whether the requested information is relevant. See Deutsche Bank Tr., 43 A.D.3d at 64; accord Veras Inv. Partners v. Akin Gump Strauss Hauer & Feld LLP, 52 A.D.3d 370, 372 (1st Dep't 2008) ("it was error for the [lower court] to find waiver on the basis of relevance alone"). Instead, the doctrine's goal is to achieve "fairness." See John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003) ("[A] party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted." (citations omitted)); accord Bilzerian, 926 F.2d at 1292 (communications are put at issue when the party makes an assertion "that in fairness requires examination of protected communications" (citations omitted)). "It would be unfair for a party who has asserted facts that place privileged communications at issue to deprive the opposing party of the means to test those factual assertions through discovery of those communications." Windsor Sec., LLC v. Arent Fox LLP, 273 F. Supp. 3d 512, 518 (S.D.N.Y. 2017). Thus, "[w]hether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." In re Grand Jury Proceedings, 219 F.3d at 183; accord Erie II, 546 F.3d at 229.

    2. Analysis

As noted, McGowan argues that JPMC has waived the privilege by (1) denying her allegation that it "did not respond to Ms. McGowan's complaint or conduct a reasonable investigation into her claims," Answer ¶ 50 (referring to Compl. ¶ 50); and (2) stating that it "acted at all times in good faith and consistently maintained, implemented, and enforced a

policy in the workplace against harassment, discrimination, and retaliation and otherwise exercised reasonable care to prevent and correct promptly any alleged harassment, discrimination, and/or retaliation to which Plaintiff claims she was allegedly subjected," Answer at 12 (Defense ¶ 15). See Mtn. Ltr. at 3-4; Reply at 8-9. We must now determine whether, in light of these assertions, fairness requires that McGowan be able to learn attorney-client privileged communications that arose during the investigation that followed her complaint of discrimination.

The first of these is easily dealt with. McGowan does not explain why it is relevant to her case that she prove JPMC did not conduct a "reasonable investigation" of her claims. Nor does she explain why JPMC could mount a defense to any aspect of her claims by showing that it conducted a reasonable investigation. The mere fact that a defendant in an answer denies an allegation made in a complaint is insufficient to place the substance of the allegation at issue for purposes of the waiver doctrine. If the rule was otherwise, any plaintiff could force a defendant to choose between the Scylla of admitting that it had conducted an inadequate investigation and the Charibdis of placing at issue the contents of any investigation that it did conduct. To be entitled to discovery, it is not enough to point to an allegation made in a complaint or to a denial of that allegation. Rather, the plaintiff must show that the allegation has relevance to a claim or defense. See Fed. R. Civ. P. 26(b)(1). In this case, McGowan does not explain why the investigation would be relevant to a claim or defense.

As to the defense asserted in the Answer, the mere use of the term "good faith" in an Answer does not by itself reflect reliance on a "good faith" defense that requires disclosure of privileged communications. See Parneros, 104 F.R.D. at 502; see also Freedman v.

16

Weatherford Int'l Ltd., 2014 WL 3767034, at *5 (S.D.N.Y. July 25) (raising good faith in an answer, without more, insufficient to find waiver) aff'd on reh'g, 2014 WL 4547039 (S.D.N.Y. Sept. 12, 2014). More fundamentally, however, neither party explains why this "defense" is even proper in this case. Indeed, they seem to agree that it is inapplicable. See Opp. Br. at 10; Reply at 10 n.3. The defense as stated in the Answer is essentially what is known as the a "Faragher-Ellerth" defense, which is a defense to a claim of harassment. See Vance v. Ball State Univ., 570 U.S. 421, 424 (2013) (the Faragher-Ellerth defense requires an employer to prove that "the employer exercised reasonable care to prevent and correct any harassing behavior and . . . the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." (citations omitted)). But there is no claim of harassment contained in McGowan's complaint. Moreover, the defense is not even available under New York law, see Zakrzewska v. New Sch., 14 N.Y.3d 469, 479 (2010), and the instant lawsuit raises exclusively claims arising under New York law. In some circumstances, the assertion of the Faragher-Ellerth defense may allow the plaintiff to obtain otherwise privileged information regarding the reasonableness of an investigation conducted by defendant. See, e.g., Babbitt, 2019 WL 3296984, at *3; Angelone v. Xerox Corp., 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011). But there is no explanation from either party as to why the "reasonableness" of JPMC's investigation in this case has any relevance to this lawsuit. Without an explanation of why the defense is relevant, Fed. R. Civ. P. 26(a)(1) prevents plaintiff from obtaining discovery on it.

It is of course hard to blame McGowan for trying to obtain discovery concerning the defense, given that JPMC included the defense in its Answer and, in the course of briefing this

motion, has refused to disclaim reliance on it. See Opp. Br. at 8-9. It would have made things much simpler if JPMC had at least stated that the nature of the investigation would not be a fact that JPMC would put at issue in its defense of the case. See, e.g., Geller v. N. Shore Long Island Jewish Health Sys., 2011 WL 5507572, at *4 (E.D.N.Y. Nov. 9, 2011) (holding that defendants did not waive privilege where counsel "affirmatively represented to the Court that defendants have no intention of 'using the investigation to avoid liability.'" (citation omitted)). In light of JPMC's refusal to do so, and the continued inclusion of the defense in its Answer, the Court will require JPMC to state now whether it intends to offer evidence of the nature of the investigation as any part of the defense of this action. If it intends to do so, it shall so state in a letter filed within 14 days of the date of this decision. See, e.g., In re Buspirone Antitrust Litig., 208 F.R.D. 516, 522 (S.D.N.Y. 2002) ("Because our rules for civil litigation presume the availability of discovery of all non-privileged factual matters that are relevant . . . a party must disclose during the discovery period whether it intends to rely on factual assertions or corresponding defenses that would require a waiver of the attorney-client privilege." (citations omitted)). If it files a letter so stating, McGowan will be entitled to the withheld documents and to discovery on the nature of the investigation. If no such letter is filed, JPMC will be precluded from offering any evidence regarding the nature of the investigation.

IV. CONCLUSION

For the foregoing reasons, McGowan's motion to compel (Docket # 81) is granted in part and denied in part to the extent stated herein. JPMC shall file the letter stating their election as stated in section III.C.2 within 14 days.

SO ORDERED.

Dated: April 24, 2020
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

19